Your Honors, may it please the Court, Karen Zwick on behalf of Petitioner Cirilo Garcia. The asylum statute begins with a broad guarantee that any alien may seek asylum irrespective of his immigration status. This same text has been considered by other circuits in the context of stowaways, and they have found it clear and unambiguous, noting that Congress spoke in no uncertain terms in crafting it. The statute also allows for an individual to seek asylum after a prior removal, based on changed circumstances. This factor is especially relevant here, given that the entire basis for Mr. Garcia's request for asylum stems from persecution that he endured nearly 10 years after his initial removal from the United States. So, given what you just identified as the very broad sweep of 1158 to allow any alien to apply for asylum, should we view the specific ban in Section 1231A, preventing aliens subject to a reinstated removal order from applying for relief, as an instance of a specific provision governing the more general one in 1158? No, Your Honor. Our position is that the asylum statute is the more specific here, and we think that the detail and the comprehensive nature of the asylum statute, as compared to the reinstatement bar, which is only one sentence, and which turns entirely on the meaning of the word relief, which is undefined in the INA, in the regulations, or anywhere, given that juxtaposition, the more specific is the asylum provision. That approach, by the way, is supported by the Supreme Court's decision in Radlach's First Amalgamated Banks, which noted that the more comprehensive and detailed a provision is, that those kinds of factors support a specificity distinction. Moreover, the government doesn't take the bar to relief in 1231A-5 as literal. They can't, because there are other forms of relief that are available, even in reinstatement. For example, U visas are available in reinstatement. The government's response to this fact is that the agency is simply exercising its discretion on a, quote, categorical basis in the U visa context. But all this means is that the government doesn't take the bar to relief, which is absolute in the text of the statute, literally, and instead believes itself able to exercise its discretion to sort of disregard that language whenever it wants. See, you maintain that if we allow individuals like Garcia, subject to a reinstated removal order to apply for asylum, the bar to any relief in Section 1231 would still apply to the majority of individuals who reenter the United States after a removal order. Yet under your interpretation, asylum, withholding of removal, and cat protection would all be available. What relief would be barred under Section 1231? Your Honor, there are many other forms of relief in the immigration, in the INA. For example, adjustment of status, cancellation of removal, voluntary departure, there are certain waivers. There are many immigration remedies that continue to apply, and for the record, what we are saying in our briefs is that 95 percent of the individuals who are subject to reinstatement at the border do not express a fear of persecution or torture, which means that this change in the rules that we're asking for would only affect 5 percent or less of reinstated, of people subject to reinstatement. So if we accept your argument that 1158 unambiguously occupies the field for assessing asylum claims, how are we to deal with the very specific ban in Section 1231A? I mean, do we simply ignore it? No, Your Honor, I don't think you need to ignore it. I think you can, what we're asking the court to do is to treat that ban as applying to forms of relief but defining the term relief for purposes of 1231A5 as excluding forms of protection, and we think that asylum, like withholding of removal and relief under the Convention Against Torture, is better defined as a term of protection. This Court's role at Chevron Step 1, obviously, is to harmonize these two provisions if possible, and we think that that approach is the way that best does so. And for the record, there is a statutory basis for this distinction between relief and protection. Section 1229A of the INA, which governs the various procedures for immigration court, in that section Congress used the phrase, quote, relief or protection, suggesting that Congress, too, envisioned for there to be a distinction between relief and protection. And the problem with the government, and the government seems to agree with this. But where in the INA era will we find support for that argument that asylum is a form of protection rather than relief? Because in our cases we certainly have not described asylum as a form of protection. Your Honor, I recognize that this Court and others, including Supreme Court, have referred to asylum as well as withholding of removal and relief under the Convention Against Torture as relief. But our position is that they are better understood as protection, and though there is no definition of protection in the INA, we think that the approach that we're asking for would allow this Court to use dictionary definitions, for example, to define that, and asylum is defined as a form of protection. The Oxford English Dictionary defines asylum as, quote, protection granted by a state to a political refugee. And the Black's Law Dictionary also defines asylum as a place of refuge and protection. The Fifth Circuit, in its decision on this issue, did make this distinction between protection and relief, but the problem with that court's decision is that it put asylum on the wrong side of that divide. That court and the government here in this case is asking for the court to define the word protection based on the distinction between mandatory and discretionary remedies. But there is no basis in law to define protection in that way. There's no reason for protection to be defined in a manner that stems from mandatory versus discretionary. Is protection, is that considered temporary and relief permanent? I'm sorry, I missed the first part of your question. Protection, is that considered temporary and relief permanent? That's just a generic question that I'm asking you. The government is suggesting that discretionary forms of relief are relief. Discretionary remedies are protection, are relief, and mandatory ones are protect... Sorry, I messed that up. The other way around. Exactly, the other way around. There's also no basis for defining the term protection in the temporal nature of any of them. And for the record, asylum is also temporary. The asylum statute authorizes the attorney general to take away someone's asylum status based on fundamental changes in circumstances. Changes in what? Circumstances. No. As far as being withheld from removal, that's kind of open-ended, I guess. Right, withholding of removal is sort of a long-term permanent limbo in this country. That's the way that it works. Where is he? Our client lives in Virginia right now. Is he free to move around and stuff? He's free to move around within the United States. He is suffering some restrictions based on his withholding status. He has family in Honduras that he can't reunite with. He can't travel abroad to see them. And also the state of Virginia doesn't allow individuals with withholding of removal access to an unrestricted driver's license, which means that he has limited movement in the state where he lives. Well, I look at this and I assume that he's no longer in Honduras, so he's not trying to stop the deforestation or whatever they're doing. But that's sort of a behavior thing. He doesn't have to do that if he went back to Honduras and went somewhere else, would he? He doesn't have to continue his political activism, but that's something that this court can't expect him to give up. The whole purpose of the refugee definition is that people can seek protection based on fundamental characteristics that they are either unable or unwilling to He would be walking. This is what's sort of curious for me. The crooked cop and whatever else you've got over there. The cop is an investigator and also a co-conspirator or something. But that isn't everywhere, I presume. That's all I'm curious about because I always wonder about this, about sending someone back. If they behave differently, they will be left alone. That's possibly true, but it's not always true. Sometimes people, just by virtue of their past actions, they go back to even the same area where they live, especially in a small country like Honduras. I think that's why you're withholding a removal. You go back to the same area, they're going to recognize you when he gets back and whatever they did in the first place. Exactly. And, of course, none of this is before the court in this case because the government hasn't appealed the grant of withholding a removal. I see that my time has expired, so I'll sit down. I will give you a minute or two for rebuttal. Hi, Ms. Morgan. Good morning, Your Honors. May it please the Court. I'm Carmel Morgan on behalf of the respondent, the U.S. Attorney General. It's the government's position that the reinstatement statute is clear and should be interpreted to prevent aliens with a reinstated removal order from being able to apply for asylum. Is the asylum statute not clear? Yes, but the asylum statute itself has, to my count, nine exceptions and a tenth open invitation to the Attorney General to further limit the availability of asylum. But there's no question from you as to this Mr. Garcia's ability or status that he is persecuted or he has fear. That's why you're not challenging that. That's correct. I just want to ask a quick timing question. Has anything changed since the filing of your briefs in the status in the petition for rehearing in the Ninth Circuit for Perez-Guzman v. Lynch? I don't believe so, Your Honor. No? Okay. I, of course, will update you when we have further information in that regard. You see, the ban in Section 1231A certainly appears to be in direct conflict with the broad right guaranteed in 1158A of any alien to seek asylum irrespective of status. How is this an ambiguity that demands agency deference under Chevron when the two statutes seem to directly conflict? Neither statute is really ambiguous, is it? The government's position is that neither is ambiguous. That's correct. Go ahead. I was just saying there's still a conflict. Yeah, there's a conflict. I don't believe that the government interprets irrespective of status to mean that you can't deny discretionary relief to someone who's in violation of a prior removal order and reenters the United States illegally. You seem to be arguing that not only is granting asylum discretionary, so, too, is the very right to apply for asylum. I mean, are you suggesting that 1158 doesn't actually convey any right to apply for asylum to any alien, as the text suggests? I think there's a number of aliens that are addressed in the asylum statute who are not able to apply for asylum either under the enumerated exceptions. Once the removal order has been reinstated, is it possible for the government to offer a petitioner like Garcia Garcia's settlement that would allow him to file for asylum? I can think of at least one instance that the Ninth Circuit decision talks about where the government decided to place the alien in 240 proceedings to allow him to pursue asylum. So the government does interpret the reinstatement statute to be subject to the government's discretion. Has that been considered in this case? Yes. I would not be here before you arguing this case if the government had wanted to do something else and place him in asylum. I just wondered if it's been considered. Yes. So the government, so this withholding status? Yes. Were you just in limbo? I mean, the withholding status, the way it is right now, this man is just in limbo. Nothing's happening either way, right? He is not being removed to the country where he fears persecution, so that's great for him. He doesn't have to go back to Honduras. He doesn't know what's going to happen, does he? I mean, any time. He's just in a withholding status. Something could change at any moment, and he's prevented from actually fully living his life if he's going to see relatives. If he even wants to go out of the country for something else, say a vacation or something, he can't do that, can he? I don't think that's completely accurate. First of all, he's not in limbo status with regards to being returned to the country where he fears being removed to. That's off the table, unless something significantly changes in Honduras for some reason where we thought that he no longer would have such a fear. And it's off the table because he has a verifiable fear. He's been granted withholding of removal. As far as travel within the United States. Excuse me, people are given asylum because of that same set of factors. Isn't that correct? The granting of asylum is also because of the situation. His facts would equate to the granting of asylum if we got to that point? It would appear so, yes. But you believe that he should be just happy in the status he has right now? Well, I think the reinstatement statute calls for that result, yes. Without looking at the asylum statute. We shouldn't even consider that. You can look at it, but Section 1231A5 speaks specifically to aliens in Mr. Garcia's position who have reentered the United States in violation of a prior removal order. And the asylum statute speaks to being able to apply for that regardless of your status, right? Irrespective of an alien status. But there are, I think, nine exceptions and a tenth open invitation to the Attorney General to further limit the availability of asylum. So the government just doesn't see a conflict between them. And to the extent that there is, the regulation is quite clear that only withholding of removal is available to aliens in Mr. Garcia's position. What I would like to present to the court, however, is that Mr. Garcia could have come to a port of entry without illegally reentering and asserted that he wanted to apply for asylum. And in that case, he would have been able to apply for asylum. He didn't do that here. He crossed by raft and by doing so evaded the port of entry. And it's that illegal reentry which imposes the bar to asylum. Is there any avenue for relief for that subset of aliens that's described in the amicus brief, those who were wrongly deported under the expedited removal procedures and have thus never had even an initial opportunity to apply for asylum? I believe there was a suit in the Ninth Circuit, and some folks who were in that situation have now been brought back to the United States. That just isn't the set of facts we have before us in this case. You know, you maintain that if Congress meant to allow an exception for asylum under 1231A, it would have done so explicitly. But it didn't mention withholding of removal or cat relief specifically, and those are nevertheless allowed. Why not asylum as well? It has to do with the mandatory and discretionary difference in relief versus protection. The reinstatement statute speaks to relief, which occasionally is construed very broadly under which withholding and cat could sometimes be seen as relief. But the reason it's not is because Congress didn't evidence an intent to back away from its mandatory treaty obligations. So withholding and protection under the Convention Against Torture are mandatory treaty obligations, which you would have to construe the reinstatement statute not to bar. What other forms of relief were precluded by 1231A? If it is only asylum that is barred, why does the statute not say as much? Oh, it's not only asylum.  It's adjustment of status. It's voluntary departure. This court itself dealt with a case speaking to adjustment of status in Leno and didn't find the term relief there ambiguous with regard to adjustment of status being a form of relief. If there are no further questions, the government asks that you deny the petition for review. Your Honor, if I may just respond to a few points by the government. First, the government suggests that if Mr. Garcia had presented himself at the border, we would not be here. There are two things to say about that. First, requiring an asylum seeker to do this is contrary not only to the text of 1158, but also to the Refugee Convention, which prohibits limiting one's access to asylum on their manner of entry into the United States. And second, to the extent that the government is suggesting that this is what would have happened automatically if he had done this, we think that's far from clear. based on our experiences of our clients and also on the government's assertions in other contexts that the only way to avoid reinstatement is to seek advanced permission to reenter the United States. My second point in rebuttal is in response to what Judge Coleman, you had said, the IJ in this case specifically stated that if she felt that she could have done so, she would have granted asylum in this case. That is a significant fact, we think, because it shows that the only thing that's barring his ability to get the more permanent relief is the regulations. And finally, as to the nine exceptions that the government mentioned repeatedly, we think that supports our position and not theirs. The fact that there are so many limits in the asylum statute speaks to its comprehensiveness and its specificity, which we think are reasons why the court should treat it as being the more specific than the broad language of 1231A5. If there are no further questions, thank you for your time. Thank you very much. Thanks to both parties, and the case will be taken under advisement.